UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,　　　　　　　　CRIMINAL NO. 06-377 (DSD/JSM)

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　REPORT AND RECOMMENDATION

JAMIE SCHMIDT,

　　　　Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

　　　　The above matter came on for hearing before the undersigned upon Jamie Schmidt's Motion to Suppress Statements, Admissions and Answers [Docket No. 14]. LeeAnn K. Bell, Assistant United States Attorney, appeared on behalf of the United States of America; Manvir Atwal, Esq., appeared on behalf of the defendant, Jamie Schmidt, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

　　　　Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing on February 21, 2007, and testimony taken from Special Agent Terry Horenburg, it is recommended that the defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 14] be **DENIED**.

**I.　　FACTUAL BACKGROUND**

　　　　At the hearing on February 21, 2007, Bureau of Alcohol, Tobacco and Firearms Special Agent Terrence Horenburg testified that he, along with Sergeant Gary Freeman of the Minneapolis Police Department and one other unnamed ATF agent, interviewed

defendant on August 10, 2006 at her residence regarding a firearm they had reason to believe she had possessed.  Upon arriving at defendant's home, they knocked for a few minutes and when defendant answered the door, she invited them inside.  According to Special Agent Horenburg, they told defendant that she did not have to speak with them and that she would not be arrested no matter what she said during the interview.  The interview lasted approximately one-and-a-half to two hours.  Special Agent Horenburg testified that he and the other officers attempted to record the interview, but that the interview is not audible on the recording because of interference from a nearby air conditioner.

   Defendant was not restrained and moved about the apartment throughout the interview.  Special Agent Horenburg testified that the tenor of the interview was cordial and that defendant offered the officers refreshments.  The officers told defendant she was free to use the phone, and during the course of the interview, she made several calls.  One call she made was to the mother of her boyfriend, Shelton McPike.  When defendant asked if she could call an attorney, the officers told her that she could.  Special Agent Horenburg testified that he did not know whether one of the phone calls she made was to an attorney or not.  During the interview, defendant also received at least two phone calls from Shelton McPike, who was in custody at the Sherburne County Jail at the time.  The Sherburne County Jail recorded these phone calls, and the recording of the first phone call was admitted into evidence as Government's Exhibit 1.  Special Agent Horenburg also spoke with Shelton McPike on the phone.  The interview continued after defendant used the phone.

None of the officers were dressed in uniform. Special Agent Horenburg could not recall if he and the other officers showed their badges, and stated that he and the other officers were carrying firearms but that he did not believe they were visible. At one point during the interview, defendant's friend, Ron, arrived at the residence. Special Agent Horenburg testified that he and the other officers may have displayed their firearms when Ron arrived. After defendant spoke with Ron, he left.

The entire interview took place in the living room and kitchen of the residence. At one point defendant left to go into her bedroom, and Special Agent Horenburg followed her to ensure that she was not retrieving a weapon. Defendant mentioned to the officers that she was a methamphetamine user and that she had mental health problems, although according to Special Agent Horenburg, she appeared fine during the interview and was coherent. Defendant was not given <u>Miranda</u> warnings at any time during the interview. At no point during the interview did defendant ask the officers to leave her residence. Defendant was not arrested at the conclusion of the interview.

Special Agent Horenburg testified that law enforcement found out about defendant from the original victim in the case in April of 2006 but did not speak to defendant until August 10, 2006, when the interview took place. Prior to interviewing defendant, law enforcement knew she had at some point possessed a firearm. Special Agent Horenburg could not recall if he ran a background check before or after the interview. At the time of the interview, defendant was ineligible to possess a firearm due to a previous felony conviction. Defendant is currently charged with being a felon in possession of a firearm.

Defendant now moves the Court to suppress the statements that she made during the interview on August 10, 2006.

## II.   ANALYSIS

Defendant seeks suppression of her statements made at the August 10, 2006 interview based on her argument that because she was in the custody of law enforcement when she was subjected to interrogation, she was entitled to advisement of her Miranda rights. The Government argues that defendant was not in custody during the interrogation and therefore was not entitled to Miranda warnings.

Miranda v. Arizona requires that an individual be advised of her right to be free from compulsory self-incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Therefore, the protections afforded by Miranda are triggered when an individual "is both in custody and being interrogated." United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (citing United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied, 503 U.S. 1011 (1992)). "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444.

When determining whether a suspect is in custody, courts consider the following six "indicia of custody":

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;

4

    (2) whether the suspect possessed unrestrained freedom of movement during the questioning;

    (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

    (4) whether strong arm tactics or deceptive stratagems were employed during questioning;

    (5) whether the atmosphere of the questioning was police dominated;  and

    (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349; see also, e.g., United States v. Axsom, 289 F.3d 496 (8th Cir. 2002).  The first three factors are considered "mitigating factors" which, if found, tend to show that the suspect was not in custody.  Griffin, 922 F.2d at 1349.  The remaining three factors are characterized as "coercive factors" which, if found, tend to show the existence of custody.  Griffin, 922 F.2d at 1349.

The determination of whether an individual is in custody at a particular time depends on "the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody."  Griffin, 922 F.2d at 1347 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)).  Moreover, the determination is based on the totality of the circumstances, with none of the factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor.  Griffin, 922 F.2d at 1347.  The ultimate inquiry is whether there was a formal arrest or restraint on defendant's movement of the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318, 322 (1995).  However, Miranda

warnings are not required merely because law enforcement officers question an individual who they suspect committed a crime. See United States v. Leese, 176 F.3d 740, 744 (3rd Cir. 1990) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

Based on the totality of the circumstances, the Court finds that defendant was not in custody during the interview on August 10, 2006. The first of the six indicia of custody is whether the suspect was informed that questioning was voluntary and was told that she was not under arrest. This factor weighs against a finding of custody in this case. According to Special Agent Horenburg, defendant was informed that she did not have to talk to the officers. Defendant was also informed that she was not under arrest and that she would not be arrested at the conclusion of the interview no matter what she said. This indicates that defendant was not in custody.

With respect to the second factor, the defendant was not restrained in any manner during the interview. Special Agent Horenburg testified that she moved around the apartment, offered the officers food and drink, and made and received phone calls. While Special Agent Horenburg followed defendant to her bedroom to ensure that she was not retrieving a weapon, this action in and of itself does not indicate that defendant was physically restrained. The second factor therefore suggests that defendant was not in custody.

The third factor for consideration, whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions, also weighs against a finding of custody. Although defendant did not initiate the interview, she voluntarily answered the questions of the officers and permitted herself to be interviewed. Furthermore, it is clear from the recording of the first telephone

6

conversation that defendant had with her boyfriend, Shelton McPike, that defendant's cooperation was voluntary. The Court has listened to the recording in its entirety. During the conversation, defendant's boyfriend repeatedly instructed her to tell the officers to leave. Defendant said "no" and stated that she was not done talking to them yet. Gov't Ex. 1. Defendant also told her boyfriend that the officers "aren't being bad at all." Id. Despite her boyfriend's urging that she stop speaking to the officers, defendant permitted the officers to stay in her residence and continued to be interviewed. This suggests that defendant was speaking to the officers voluntarily, and therefore the third factor weighs against a finding that defendant was in custody during the interview.

With respect to the fourth factor, there is no evidence or suggestion that strong arm tactics or deception were employed by the officers who interviewed defendant. The officers knocked on the door, introduced themselves as law enforcement, displayed their badges, and asked if they could speak with defendant. Although Special Agent Horenburg testified that they may have displayed their weapons when defendant's friend Ron knocked on the door, they did do so not in an effort to compel defendant to talk to them but rather in order to be prepared for an unexpected situation. Because there is no evidence that the interviewing officers employed any strong arm tactics or deceptive strategies, the fourth factor suggests that defendant was not in custody.

Regarding the fifth factor, the atmosphere could be considered to be dominated by law enforcement, if only because there were three officers and the defendant was otherwise alone. However, the interview took place at the defendant's residence, and as discussed above, the defendant moved around, made and received phone calls, offered the officers food and drink, and was generally comfortable during the interview.

7

Therefore, although there were three officers and defendant was alone, the atmosphere was not so police-dominated as to warrant a finding that defendant was in custody.

Finally, as to the sixth factor, defendant was not placed under arrest at the conclusion of the interview. Defendant was not indicted until November 14, 2006 and was not arrested until December of 2006. This weighs against a finding of custody.

In light of the above facts and analysis, the Court finds that a reasonable person in defendant's position would not have believed that he or she was in custody. Therefore, the Court concludes that defendant was not in custody during the interview at her residence on August 10, 2006. As such, she was not entitled to <u>Miranda</u> warnings and her motion to suppress statements made during the August 10, 2006 interview should be denied.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 14] be DENIED.

Dated:   March 12, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **March 26, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.